**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**NORTHERN DIVISION**

ANTHONY G. HUNTER,

    Plaintiff,

v.                                    Civil No. 05-CV-10213-BC

COMMISSIONER OF                       DISTRICT JUDGE DAVID M. LAWSON
SOCIAL SECURITY,                      MAGISTRATE JUDGE CHARLES E. BINDER

    Defendant.
_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I.     RECOMMENDATION**

In light of the entire record in this case, I suggest that substantial evidence does not support the Commissioner's determination that Plaintiff is not disabled. Accordingly, IT IS RECOMMENDED that PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT BE GRANTED, DEFENDANT'S MOTION FOR SUMMARY JUDGMENT BE DENIED, that the FINDINGS OF THE COMMISSIONER BE REVERSED, and the case REMANDED for an award of benefits.

**II.    REPORT**

    **A.     Introduction and Procedural History**

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case has been referred to this Magistrate Judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for a period of disability and disability

insurance benefits. This matter is currently before the Court on cross motions for summary judgment.

Plaintiff was 42 years of age at the time of the most recent administrative hearing and has completed a GED. (Tr. at 153, 60.) Plaintiff's relevant work history included work as an intake processor in a probation office, painter, and truck driver. (Tr. at 55.)

Plaintiff filed the instant claim on September 17, 2002, alleging that he became unable to work on August 14, 2001. (Tr. at 43-45.) The claim was denied initially. (Tr. at 27.) In denying Plaintiff's claim, the Defendant Commissioner considered diabetes mellitus and neuropathy as possible bases of disability. (*Id.*)

On October 28, 2004, Plaintiff appeared without counsel before Administrative Law Judge (ALJ) Lou Jacknycky, who considered the case *de novo*. In a decision dated November 24, 2004, the ALJ found that Plaintiff was not disabled. (Tr. at 14-26.) Plaintiff requested a review of this decision on December 10, 2004. (Tr. at 13.) Plaintiff later retained counsel (Tr. at 12), and a second request for review was filed January 18, 2005. (Tr. at 8.)

The ALJ's decision became the final decision of the Commissioner when, after the review of an additional exhibit[1] (AC-1, Tr. at 134-47), the Appeals Council, on July 18, 2005, denied Plaintiff's request for review. (Tr. at 4-6.) On August 12, 2005, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

---

[1] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

### B.     Standard of Review

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited to determining whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner's decision employed the proper legal standards. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997); *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (per curiam). The Commissioner is charged with finding the facts relevant to an application for disability benefits. A federal court "may not try the case de novo, . . . ." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir.1984).

If supported by substantial evidence, the Commissioner's decision is conclusive, regardless of whether the court would resolve disputed issues of fact differently, *Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1028 (6th Cir.1990), and even if substantial evidence would also have supported a finding other than that made by the ALJ. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc). The scope of the court's review is limited to an examination of the record only. *Brainard,* 889 F.2d at 681. "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 681 (citing *Consolidated Edison Co. v. NLFB*, 305 U.S. 197, 229, 59 S. Ct. 206, 216, 83 L. Ed. 2d 126 (1938)). The substantial evidence standard "'presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference from the courts.'" *Mullen*, 800 F.2d at 545 (quoting *Baker v. Heckler*, 730 F.2d 1147, 1149 (8th Cir. 1984)) (affirming the ALJ's decision to deny benefits because, despite ambiguity in the record, substantial evidence supported the ALJ's conclusion).

The administrative law judge, upon whom the Commissioner and the reviewing court rely for fact finding, need not respond in his or her decision to every item raised, but need only write to support his or her decision. *Newton v. Sec'y of Health & Human Servs.*, No. 91-6474, 1992 WL 162557 (6th Cir. July 13, 1992). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Anderson v. Bowen*, 868 F.2d 921, 924 (7th Cir. 1989) ("a written evaluation of every piece of testimony and submitted evidence is not required"); *Walker v. Bowen*, 834 F.2d 635, 643 (7th Cir. 1987) (ALJ need only articulate his rationale sufficiently to allow meaningful review). Significantly, under this standard, a reviewing court is not to resolve conflicts in the evidence and may not decide questions of credibility. *Garner,* 745 F.2d at 387-88.

**C.    Governing Law**

In enacting the Social Security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination which can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen*, 800 F.2d at 537.

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). "[B]enefits are available only to those individuals who can establish 'disability' within the terms of the Social Security Act." *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). One is thus under a disability "only if his physical or mental . . . impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 1382c(a)(3)(B).

A claimant must meet all five parts of the test set forth in 20 C.F.R. § 404.1520 in order to receive disability benefits from Social Security. The test is as follows:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments, benefits are denied without further analysis.
>
> Step Three: If the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled without further analysis.
>
> Step Four: If the claimant is able to perform his or her previous work, benefits are denied without further analysis.
>
> Step Five: If the claimant is able to perform other work in the national economy, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Garcia v. Sec'y of Health & Human Servs.*, 46 F.3d 552, 554 n.2 (6th Cir. 1995); *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th

Cir. 1994); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990); *Salmi v. Sec'y of Health & Human Servs.*, 774 F.2d 685, 687-88 (6th Cir. 1985). "The burden of proof is on the claimant throughout the first four steps of this process to prove that he is disabled." *Preslar*, 14 F.3d at 1110. "If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the [Commissioner]." *Id.* "Step five requires the [Commissioner] to show that the claimant is able to do other work available in the national economy. . . ." *Id.*

### D.     Administrative Record

A review of the medical evidence contained in the administrative record and presented to the ALJ indicates that in early July 1997, Plaintiff was seen by physicians at the Henry Ford Health System. Plaintiff reported that he had been suffering from diabetes for the past six years and described having numbness and tingling in the right leg for the previous eight months. (Tr. at 83.) Plaintiff stated that he was beginning to experience similar symptoms in the left leg and that his right first index finger was becoming numb. He denied weakness or back pain, but described brief blurring of vision in his left eye. Plaintiff also stated that he had suffered from Osgood-Schlatter's disease[2] of the knee. Plaintiff stated that he was working full time as a musician at that time. Physical examination showed no evidence of language or cortical dysfunction. (Tr. at 84.) Plaintiff's muscle tone was normal throughout. Decreased sensation to pinprick was seen in both feet, but sensation was intact in the arms. (*Id.*) Deep tendon reflexes were absent in the brachial nerves. Reflexes in the biceps and triceps were described as "trace." (*Id.*) Knee jerk reflex was diminished in the right knee and absent in the left knee. Plaintiff's gait was normal, and he was

---

[2]Osgood-Schlatter's disease is defined as "[a] disease of the tuberosity of the tibia, the bony prominence on the upper front part of the shinbone, to which the tendon of the front muscle of the thigh is attached." 4 J. E. SCHMIDT, M.D., ATTORNEYS' DICTIONARY OF MEDICINE O-106.

able to walk on heels and toes.  The doctor advised Plaintiff to tighten his blood sugar control and ordered further tests.  (*Id.*)

A cardiac exercise stress test conducted in early July 1998 showed no significant abnormalities but did indicate mild ventricular hypertrophy.[3]  (Tr. at 90.)

In late August 1999, Plaintiff underwent a CT scan of the brain in order to investigate left facial numbness described by Plaintiff.  The CT scan was normal.  (Tr. at 99.)

In late October 1999, Plaintiff underwent a holter cardiac monitoring.  (Tr. at 100.)  Except for occasional premature contractions, Plaintiff's basic heart rhythm was normal.  (*Id.*)  No symptoms were reported by Plaintiff during the monitoring.  A sonogram of Plaintiff's carotid arteries taken at the same time was also normal.  (Tr. at 101.)

In late November 2000, Plaintiff was hospitalized at the Henry Ford Wyandotte Hospital for complaints of right lower quadrant pain.  (Tr. at 107.)  Plaintiff's treating physicians admitted him for observation to rule out appendicitis.  (Tr. at 108-09.)

In mid-February 2002, Plaintiff was seen at the request of the Wayne County Social Services Department by Dr. R. Sill.  The doctor noted that Plaintiff's grip strengths were normal, as was muscle tone in the arm and shoulder muscles.  The muscles of Plaintiff's legs were characterized as "weak."  Deep tendon reflexes were depressed, and ankle and knee jerk reflexes were "very much depressed."  (Tr. at 129.)  Pinprick sensation was diminished in both the arms and the legs, as was vibration sensation.  Plaintiff could not undertake a tandem gait test because he could not maintain his balance.  His gait was slow but normal.  He could dress and undress

---

[3]Hypertrophy is defined as "an abnormal enlargement of a part of an organ due to an increase in the size of its constituent cells.  Hypertrophy is usually a compensating mechanism, to enable the organ to perform more work than its normal structure would allow."  3 J. E. SCHMIDT, M.D., ATTORNEYS' DICTIONARY OF MEDICINE H-256.

7

himself without difficulty, but he evidenced difficulty tying his shoes because the index and middle fingers of both hands were numb. The doctor concluded that Plaintiff was suffering from diabetic neuropathy, a weakness of muscles, diminished sensation, and difficulty maintaining balance. (*Id*.)

In early January 2003, one of Plaintiff's physicians completed a Michigan Family Independence Agency medical examination report. The doctor stated that Plaintiff was suffering from uncontrolled diabetes since 1991, as well as peripheral neuropathy. (Tr. at 131.) The doctor felt that Plaintiff could lift up to 20 to 25 pounds and sit for up to 6 hours. (Tr. at 132.) The doctor felt that Plaintiff could undertake simple grasping, reaching, and pushing and pulling actions. The doctor noted that Plaintiff had difficulty walking. (*Id*.)

In early February 2003, Plaintiff was examined at the request of the Disability Determination Service by Dr. Erwin Pear. (Tr. at 110-12.) Physical examination showed that Plaintiff's joints exhibited normal range of motion, however, Plaintiff was unable to manipulate his small toes. The doctor reported that Plaintiff appeared to have a poor sense of balance and sharp stabbing pain in both feet. (Tr. at 112.) Plaintiff reported that he could not walk more than a block and that climbing stairs was very difficult for him. Plaintiff recounted that he had been unable to obtain insulin for some time, although recently he had acquired a new supply. (*Id*.) Plaintiff's unaided vision was 20/200 in both eyes and 20/20 with glasses. (Tr. at 113.)

In mid-August 2004, Plaintiff's physicians completed Michigan Family Independence Agency "medical needs" forms. (Tr. at 123-28.) They noted Plaintiff's diabetic neuropathy and retinopathy. They stated that Plaintiff's condition would be permanent, deteriorating, and not remediable. (Tr. at 125.) A number of the forms stated the physicians' opinions that Plaintiff was disabled. (Tr. at 125-27.) One physician noted "severe neuropathy" and "poor vision." (Tr. at

124.) Two of the forms indicated that Plaintiff could not lift greater than five pounds nor stand, sit or walk for more than one to two hours at a time. (Tr. at 125-27.)

In late September 2004, in a "To Whom It May Concern" letter, Dr. Kamal Gupta stated that Plaintiff had developed "both background and proliferative diabetic retinopathy. His visual acuity is now reduced to 20/70 in the right eye and 20/60 in the left eye." (Tr. at 133.) The doctor stated that Plaintiff was undergoing photocoagulation procedures and that his long-term visual prognosis was "guarded." (*Id.*)

At the administrative hearing, a Vocational Expert (VE) testified. In response to a hypothetical question presuming a person of Plaintiff's circumstances who suffered from diabetes, neuropathy and retinopathy, as well as Osgood-Schlatter's disease, who was limited to sedentary exertion work, lifting a total of ten pounds, who could sit for six to eight hours a day and walk for two hours a day, at a job which could be done either sitting or standing and involved no bending or reaching above the shoulders, no squatting, crouching, or climbing, doing simple tasks which did not require the manipulation of small objects, and were not done in the vicinity of heights or moving machinery, the VE identified approximately 1,000 unskilled sedentary inspection jobs; 1,000 telemarketer; 1,000 parking lot attendant; 1,500 sorting; and 2,000 hand packaging jobs consistent with these hypothetical conditions. (Tr. at 180-82.)

### E.   ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity since the onset of his disability. (Tr. at 25.) At step two, the ALJ found that Plaintiff's diabetes with neuropathy and retinopathy, hypertension, history of Osgood-Schlatter's disease in the knees, and depression were "severe" within the meaning of the second sequential step. (*Id.*) At step three, the ALJ found no

evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (*Id.*) At step four, the ALJ found that Plaintiff could not perform his previous work. (*Id.*) At step five, the ALJ denied Plaintiff benefits because Plaintiff could perform a significant number of jobs available in the national economy. (Tr. at 26.)

Using the Commissioner's grid rules as a guide, the ALJ found that:

> there are a significant number of jobs in the national economy that he could perform. Examples of such jobs include: inspector (1,000 jobs at the sedentary exertional level in Southeast Michigan); telemarketer (1,000 jobs), parking lot attendant (1,000 jobs), sorter (1,500 jobs), and hand packager (2,000 jobs).

(*Id.*)

### F.     Analysis and Conclusions

### 1.     Legal Standards

The ALJ determined that Plaintiff possessed the residual functional capacity to return to a significant range of sedentary work. (Tr. at 25.)

> Sedentary work involves lifting no more than ten pounds at a time and occasionally lifting and carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. 404.1567(a) (1991). Social Security Ruling (SSR) 83-10 clarifies this definition and provides that:

> "Occasionally" means occurring from very little up to one-third of the time. Since being on one's feet is required "occasionally" at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday. Work processes in specific jobs will dictate how often and how long a person will need to be on his or her feet to obtain or return small articles.

After review of the record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether or not substantial evidence supports the ALJ's decision.

**2.     Substantial Evidence**

Plaintiff argues that substantial evidence fails to support the findings of the Commissioner. In this circuit, if the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker,* 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

On this record, I suggest that substantial evidence fails to support the findings of the ALJ. The medical records presented for review make clear that Plaintiff's physical condition has steadily deteriorated as a result of his diabetes. In February 2002, a physician examining Plaintiff for the Wayne County Department of Social Services found the reflexes of Plaintiff's legs significantly diminished. (Tr. at 129.) Plaintiff was not able to perform a tandem walking exercise because he could not maintain his balance, and he had difficulty tying his shoes because of numbness in the hands. (*Id.*) In 2003, one of Plaintiff's physicians felt that Plaintiff could lift up to 25 pounds. (Tr. at 132.) By August 2004, multiple physicians felt that Plaintiff could lift only 5 pounds. (Tr. at 125, 127.) In February 2003, the Commissioner's examining physician found that Plaintiff was unable to manipulate his small toes and had a poor sense of balance. (Tr. at 112.) He also measured Plaintiff's corrected vision at 20/20. (Tr. at 113.) In September 2004, Dr. Gupta measured Plaintiff's vision at 20/70 and 20/60. (Tr. at 133.) The doctor characterized Plaintiff's visual prognosis as "guarded" and noted the development of other diabetic retinopathy conditions

in his eyes. (*Id.*) The progression of Plaintiff's deterioration is, I suggest, further corroborated by exhibits presented to the Appeals Council. (Tr. at 144-47.)

Nor can the VE's hypothetical questions, I suggest, constitute substantial evidence supporting the ALJ's findings. In this circuit, a hypothetical question must include all physical and mental limitations supported by the record. *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 780 (6th Cir. 1987). Although the VE sought to list in his hypothetical questions the primary diagnoses made by Plaintiff's treating physicians, I suggest that the remainder of the hypothetical question disregards the objective medical findings made by Plaintiff's treating physicians and the deterioration of his physical condition noted above.

Once it has been determined that the Commissioner's administrative decisions are not supported by substantial evidence, a district court faces a choice. It may either remand the case to the Commissioner for further proceedings or direct the Commissioner to award benefits. In this circuit, the latter option requires that the "proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking[,]" *Mowery v. Heckler* 771 F.2d 966, 973 (6th Cir. 1985), or that "all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits[.]" *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994). Under these standards, I suggest that because the medical evidence of record adequately and consistently establishes Plaintiff's entitlement to benefits, and that evidence to the contrary is lacking, remand for an award of benefits is appropriate.

### III.   REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure

to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n. of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

　　　　　　　　　　　　　　　　　　　s/ *Charles E. Binder*
　　　　　　　　　　　　　　　　　　　CHARLES E. BINDER
Dated: February 24, 2006　　　　　　　United States Magistrate Judge


**CERTIFICATION**

I hereby certify that this Report and Recommendation was electronically filed this date, electronically served on Janet Parker and Kenneth Laritz, and served in the traditional manner on Honorable David M. Lawson.


Dated: February 24, 2006　　　　　　　By　　s/Mary E. Dobbick
　　　　　　　　　　　　　　　　　　　Secretary to Magistrate Judge Binder